## No. 122.

### A. P. DUMAS *v.* WIDOW A. BOULIN.

1. The party demanding a trial by jury is bound not only to make a deposit of the jury fee, but also to keep the same good. Therefore, if the sum so deposited be embezzled, or otherwise lost, it is at his risk.*

2. The loss of such deposit would not *ipso facto* deprive the litigant who had made it, of his right to a trial by jury. He should have reasonable time and opportunity to recover, or replace the sum lost.

3. If, however, as in this case, after due notice and demand, he neglects, or refuses to replace, or recover such deposit, the effect from the moment of default, is the same as though he had never advanced such jury fee.

4. Definitions of the word "include."

5. In interpreting doubtful portions of a statute, the context must be appealed to, where it furnishes a key.

6. The Act of 1860, p. 130, and its successor, La. C. C., Art. 2924, last paragraph, excluding the defense of usury against certain written obliga-

---

* Under the laws of Louisiana, juries are impanelled in civil causes, only when demanded by one, or both, of the litigants.—Reporter.

tions, applies only to notes, bonds, etc., which evidence a complete contract, and which include the principal and usurious interest.

7. They do not apply to a note, etc., which has no consideration other than usurious interest upon another contract or obligation.

*Appeal from the Civil District Court, Parish of Orleans, Division C. Monroe, Judge.*

*R. L. Belden* for plaintiff.

*Albert Voorhies* for defendant, appellant.

McGLOIN, J.—The issues in this case are preserved by bills of exception, and are likewise presented by a statement of facts. The circumstances pertinent to the first question we have investigated, are as follows : The suit was pending before the late Fourth District Court and was transferred, under the Constitution, to the Civil District Court. Defendant had, before the first named tribunal, demanded a jury and made the legal deposit for jury fees. Plaintiff transferred the record and cause, and then ruled the defendant to show cause why the case should not be placed upon the ordinary docket and tried without the intervention of a jury. Plaintiff's contention is, that it was defendant's duty, within a reasonable time, either to transfer or replace the deposit he had made. Defendant maintained that the plaintiff should have demanded the same from the clerk of the former court and placed it in the possession of the clerk of the Civil District Court

The reason for compelling such a deposit, at the moment of demanding a trial by jury, is to ensure the prompt payment to each juryman of the compensation allowed him by law, and at the same time to prevent the possibility of such applications being made for or causing delay. If a party could demand such a trial, and secure the transfer of the case to the jury docket, and then refuse to provide the sum necessary to compensate the jurors, there would be left open only one of three alternatives. Either the cause would have to be postponed and then remitted to the ordinary docket, after considerable loss of time; or the jurymen would be compelled to serve with-

out immediate recompense, awaiting for the paltry fee allowed them by law, until it be collected as other costs; or else the party, who had not desired such manner of trial, would have imposed upon him the obligation of advancing the fund necessary to defray its expense.

The object of the law is, therefore, not simply to arbitrarily tax the claimant, demanding such a trial. It has the broader purpose of imposing upon him the duty of providing for the *immediate payment* of the jurymen, so soon as they shall have disposed of the cause. The provision requiring the deposit is only a method of the law for securing this end; but it does not remove the general obligation itself of accomplishing it from the party upon whom it rests. Therefore, in our opinion, the applicant is not only compelled to make, but he must maintain this deposit, so that the *purpose* of the law be accomplished. Should it be embezzled, or otherwise lost, it is at his risk, as the deposit is only in the nature of a guarantee or security for the performance of a legal obligation, which it does not, in any manner, extinguish or replace.

Should such deposit be lost, the applicant should not thereby, *ipso facto*, lose his right to a jury; but he should, upon ascertaining the loss, have an opportunity of replacing the deposit. If, however, as in this case, after due notice, he neglects or refuses to renew or recover it, the effect, from the moment of default, is the same as though he had never furnished the amount by law required of him. The ruling of the Court, therefore, making absolute the rule in question was correct.

The second bill touches the merits of the cause. The note sued upon, it seems, has for its consideration usurious interest upon another preceding contract. The history of the usury laws of this State is well and elaborately given by Mr. Justice Marr, in his opinion in the case of Chaffe & Son *v.* Heyner, 31 La. An. 606, 607. We consider it there demonstrated that where a contract of loan is involved the charging of usurious interest in this State forfeits all the interest, and not merely the unlawful excess.

The last paragraph of Art. 2924 C. C. furnishes the law which must determine this case. It has been held in Crane *v.* Beatty, 15 La. An. 329, and Campbell *v.* Hilliard, 15 La. An. 537, that the Act of 1856, p. 130, which was the origin of the second to the last paragraph of C. C , Art. 2924, applies only to cases where notes, or similar paper, were purchased or discounted, and not to those where the person taking the paper was the one who made the loan at usurious interest. It has frequently, also, been held, that the usury laws apply only to contracts of loan. Byrne *v.* Grayson, 15 La. An. 457; 11 La. 493; 15 La. 306; Bank of La. *v.* Briscoe, 3 La. An. 157; Mills *v.* Crocker, 9 La. An. 334.

But the last paragraph of C. C. Art. 2924, which reproduces Act of 1860, p. 41, is much broader than the one immediately preceding it, which is itself preservative of Act of 1856, p 130. By its provisions " the owner of *any promissory note, bond, or other written evidence of debt,* for the payment of money to order or bearer, or transferable by assignment, shall have the right to collect the whole amount of such promissory note    *    *    *    notwithstanding such promissory note, etc., may include a greater rate of interest, or discount, than eight per cent per annum," etc.

Mr. Justice Marr, in the case cited, says : " It is not necessary to express any opinion now as to what the effect would be, *as between the original contracting parties,* where interest above eight per cent. is included as a part of the capital sum and a note given for the aggregate amount, in the settlement of an ordinary debt."

This case, by subrogation, stands now between the original parties, but, the conclusion reached upon other questions, releases us from the necessity of expressing our opinion upon this point.

The fate of this case turns upon a construction of the word " include," as used in the last paragraph of the article cited. This word has two meanings, or, rather, we might say, two s hades of the same meaning. It may apply where that which

is affected is the *only thing* included, in which sense, it would cover this case. It is also used to express the idea, that the thing in question constitutes a part only of the contents of some other thing. The latter sense we consider the most usual (C. C. 14), but on the other hand, it restricts more the scope of the law. The adoption of the latter would be more in harmony with the general drift of the usury laws, as contained in the Code and Statutes, but, it is possible that the Legislature had in view the assimilation of this branch of the law to that governing promises to pay conventional interest, or the debt of a third person, by making its prohibitions inapplicable when the parties have reduced their agreements to writing. Under these circumstances, the duty of discovering the legislative intent becomes one of difficulty. C. C. Art. 16, requires or permits us, in such cases, to appeal to the context. By so doing we consider that the words " may collect the *whole amount* of such promissory note, etc., notwithstanding such promissory note, etc." * * * taken in connection with the terms, " may include a greater rate of interest, etc.," afford us a guide as to the idea which was in the legislative mind at the time of the enactment of this law. It, in our judgment, clearly implies that the character of writings in view were those which evidenced a complete contract, including principal and interest of its own, and not one, like the present, which, properly speaking, had no capital and included nothing but usurious interest upon another contract. This paragraph creates an exception to the general law upon this subject, and therefore is not to be extended. We are not at liberty to apply it to cases, or circumstances, which we do not believe came within the contemplation of the Legislature when it was enacted.

As, therefore, the law forfeits the whole of the interest, when it is usurious, and as this note has no other consideration but such usurious interest, we believe that it cannot be enforced by courts of justice.

Judgment reversed and now rendered for defendant, with all costs.